**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| CATHY MORRIS, | ) | |
| | ) | No. 2:09-cv-03267-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| DORMA AUTOMATICS INC. AND | ) | |
| CAROLINA DOOR CONTROLS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on a motion in limine and a renewed motion for summary judgment brought by defendants Dorma Automatics Inc. (Dorma Automatics) and Carolina Door Controls, Inc. (Carolina Door) (collectively, defendants). For the reasons set forth below, the court grants in part the motion in limine and grants the motion for summary judgment.

### I.  BACKGROUND

This products liability case was filed by plaintiff Cathy Morris in state court on November 16, 2009 and removed to this court on December 21, 2009.[1] In her complaint, Morris alleges that on June 24, 2008, she was injured by a set of automatic doors as she attempted to walk through the main entrance to the Kmart store on Savannah Highway in Charleston, South Carolina. Compl. ¶¶ 5-7, 14. She asserts that a manufacturing defect caused the doors to hesitate and partially close on her as she entered the store, which proximately caused her injuries. Id. ¶¶ 6, 14. Morris claims that Dorma Automatics manufactured the doors and Carolina Door installed and maintained the doors. Id. ¶¶ 4,

---

[1] Kmart Corporation was also a defendant in Morris's original case, but settled with Morris prior to trial.

1

10. She contends defendants should be held liable for her alleged injuries based on theories of strict liability and negligence.

On March 29, 2012, the court denied a motion for summary judgment brought by defendants. In that order, the court recognized that while a plaintiff in a products liability suit may allege a manufacturing defect, a warning defect, or a design defect, here, Morris has chosen to proceed on a manufacturing defect theory. Viewing the evidence in the light most favorable to Morris, genuine issues of material fact existed as to her claims for strict liability and negligence. The court noted that Morris "relies on direct and circumstantial evidence," rather than expert testimony, "to prove the elements of her claims," and that "[s]he is entitled to do so if she can." Dkt. No. 50 at 4.

On July 24, 2012, the court held a hearing on defendants' motion to exclude the testimony of Morris's proposed expert, Leonard Greene. The court granted the motion to exclude because Greene failed to submit an expert report that complied with Federal Rule of Civil Procedure 26(a)(2)(B). Morris decided to go forward with her case without the benefit of expert testimony.

This trial was scheduled to begin on January 14, 2013. Prior to trial, defendants filed two motions in limine, seeking first to exclude various work orders, service reports, and warranty bills, and second to exclude a video complication of incidents purportedly involving the automatic doors at issue in the case. The court held a hearing on the motions in limine on January 10, 2013. During the hearing, counsel for plaintiff explained that the specific defect alleged in this case is a malfunctioning Superscan on the interior side of the left entrance door.[2]

---

[2] A service technician for Carolina Door explained in his deposition that a Superscan, which is a door-mounted presence detection system, "would prohibit the door from being able to hit you,

The motion to exclude the video compilation, Dkt. No. 84, was resolved at the hearing, as counsel for Morris stated he would only attempt to use the video for impeachment purposes. After the hearing, the court granted in part the remaining motion in limine and sent the details of the ruling to counsel. Based on the court's evidentiary rulings, on January 14, 2013, prior to the start of trial, defendants renewed their motion for summary judgment as to Morris's claims for strict liability and negligence.

## II.   DISCUSSION

Defendants move to exclude various work orders, service reports, and warranty bills, arguing that these proposed exhibits are irrelevant, unduly prejudicial, or otherwise inadmissible. Defendants additionally renew their motion for summary judgment as to both of Morris's claims.

### A.     Motion in Limine

The proposed exhibits can be grouped into two categories. The first category includes seven documents—work orders, service reports, and warranty bills—that predate the incident on June 24, 2008 in which Morris was allegedly injured by the automatic doors. The second category includes nine similar documents that postdate the alleged incident.

"Relevant" evidence is defined in the Federal Rules of Evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Rule 403 provides that the court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice,

---

from making contact with you," and is "supposed to keep the door from closing on somebody." Pl.'s Mem. Opp. Defs.' Mot. in Limine 5, 8 (citing Fisher Dep. 20:6-21:14).

confusing the issues, misleading the jury, . . . or needlessly presenting cumulative evidence." Finally, under Rule 407, evidence of subsequent remedial measures that would have made an earlier injury or harm less likely to occur is inadmissible if offered to prove negligence, culpable conduct, a defect in a product or its design, or a need for warning or instruction. Fed. R. Evid. 407; see <u>Bell v. Nash Finch Co.</u>, 167 F.3d 475 (4th Cir. 1999) (table).

### 1.     Proposed Exhibits that Predate the Incident

Plaintiff's first proposed exhibit, Exhibit No. 6, is a work order dated June 2, 2008. The "Description of Work" section states, "New doors not working properly. Possible sensor issue. Called after hours said it could wait till Monday." From this description, it is unknown whether this work order relates to the specific product defect alleged in this case, i.e., a manufacturing defect in the interior Superscan on the left entrance door. Thus, the relevance of this document is questionable. To admit this document even though it does not relate to Morris's theory of liability would prejudice defendants by allowing a jury to determine that because other parts of the doors were not working properly, the particular Superscan at issue was also not working properly. The trial court's role is to safeguard against such prejudice. See <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 167-68 (1998) (noting that a trial judge "has the discretion, and indeed the obligation," to exclude untrustworthy reports, and that "safeguards built into . . . the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing" evidence). Therefore, the document will not be excluded at this time, but may only be admitted at trial if Morris can offer testimony showing that it relates to the specific defect alleged in this case.

Exhibit No. 7 is a service report dated June 2, 2008. Next to "Nature of problem," the report reads, "Entrance doors won't work properly." The "Work performed" includes, "Reset both controls, need to replace an interior Superscan, moved one from the approach side to the swingpath side for safety, door is working fine at this time." It is unknown whether this service report relates to the particular defect alleged in this case, as the report could be referencing a Superscan on either the left or right entrance door. Therefore, this document may only be admitted at trial if Morris can offer foundational testimony to establish relevance.

Exhibit No. 8 is a service report dated June 10, 2008. The "Nature of problem" reads, "Entrance door doesn't work properly," and the "Work performed" states, "Replaced breaker slave for Superscan." It is unknown whether this service report relates to the particular defect in the left hand door as alleged in this case, so this document may only be admitted at trial if Morris can establish relevance by offering foundational testimony.

Exhibit No. 9 is a warranty bill dated June 19, 2008. The "Work" includes "Repl[aced] breaker slave for Superscan. Reset both c[ontrols]. Fixed screws for weatherstripping." In addition, a "Superscan II Presence Sensor," costing $406.86, is billed to National Glass and Gate Service. It is unknown whether this service report relates to the particular defect in the left hand door as alleged in this case, so this document may only be admitted at trial if Morris can establish relevance by offering foundational testimony.

Exhibit No. 10 is a service report dated June 15, 2008. The "Nature of the problem" was that the "RH [right-hand] entrance door won't operate," and the "Work

performed" was, "Reset the controls, one would not reset, changed it, made some sensor adjustments, doors are working fine at this time." A service technician for Carolina Door who wrote the report confirmed in his deposition that "[t]he description was 'right-hand entrance doors.'" Pl.'s Mem. Opp. Defs.' Mot. in Limine 5 (citing Fisher Dep. 19:1-12). This exhibit is not only irrelevant, as it does not concern the specific defect alleged in this case, but its introduction at trial would have a high likelihood of confusing the issues and misleading the jury in a way that would be prejudicial to defendants. For these reasons, it is excluded.

Exhibit No. 11 is a work order dated June 16, 2008. The "Description of work" states, "Beams on door not working. Called in as ER service on 06-15-08. Tech installed ED 400." Regarding the "ED 400," the service technician testified,

> Q: All right. Well, let me ask you, what's the ED 400 sensor?
> A: That's actually the microprocessor that makes it all work.
> Q: Okay. So that's not one of the sensors? . . . .
> A: No, sir.

Pl.'s Mem. Opp. Defs.' Mot. in Limine 5 (citing Fisher Dep. 22:21-23:17). Like Exhibit No. 10, this exhibit is not only irrelevant, as it does not pertain to the Superscan at issue, but its probative value, if any, is outweighed by the danger of confusing the issues, misleading the jury, and causing unfair prejudice. Therefore, it is excluded.

Exhibit No. 12 is a service bill dated June 19, 2008. The "Work" includes, "[Exterior entrance door] – Reset [controls]. One of the [controls] would not work. Repl[ace] [control]. Adj[ust] sensors. [Doors] working properly at this time." In addition, an "ED-400 Control-New," costing $477.16, is billed to Dorma Automatics. This exhibit is excluded for the same reasons that pertain to Exhibit No. 11.

6

### 2.     Proposed Exhibits that Postdate the Incident

The second group of exhibits includes work orders, service reports, and warranty bills that postdate the incident. The first, Exhibit No. 17, is a work order dated July 15, 2008. The "Description of work" includes, "Main fr[on]t ent[rance] d[oor]'s sensors not working properly. Has tried to reset several times." It is not clear from the document that it provides relevant information. Even assuming its relevance, Federal Rule of Evidence 407 prohibits the introduction of evidence of subsequent remedial measures if offered to prove negligence, culpable conduct, or a defect in a product or its design. This rule is referred to as the "subsequent repairs doctrine." "[C]ourts have excluded remedial measures because their admission would unduly risk that the factfinder would imply culpability to the injury or harm alleged." Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 428 (5th Cir. 2006).

Here, Morris seeks to introduce Exhibit No. 17 to prove that the Superscan at issue was defective and to recover for her alleged injuries. However, Exhibit No. 17 shows evidence of a measure actually implemented to fix unspecific sensor problems with the Kmart automatic doors. Because "Rule 407 prohibits evidence of measures . . . actually implemented," id. at 431, and this is evidence of a "post-accident remedial measure[]," id. at 429, it must be excluded under Rule 407. Such a finding is commensurate with the policy underlying the rule. See Fed. R. Evid. 407 Advisory Committee's Notes ("The . . . more impressive . . . ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety."); TLT-Babcock, Inc. v. Emerson Elec. Co., 33 F.3d 397, 400 (4th Cir. 1994) ("Rule 407 is based on the policy of encouraging potential defendants

7

to remedy hazardous conditions without fear that their actions will be used as evidence against them.").

Next, Exhibit No. 18 is a service report dated July 16, 2008. Next to "Nature of problem," the report reads, "Main entrance door only half of it opens." The "Work performed" includes in part, "tightened some wire terminations, left leaf began working . . . doors are working fine." The relevance of this document, if any, is not clear from the description of work performed. Assuming its relevance, the document must nevertheless be excluded under the subsequent repairs doctrine, as it references attempted repairs made to the automatic doors after Morris was allegedly injured on June 24, 2008.

Exhibit No. 19 is a work order dated August 14, 2008. The "Description of work" states, "Both the entrance & exit doors are not responding to the sensors." A note also refers to the "left . . . side" and notes that it "opens halfway – then closes." It does not appear that the subsequent repairs doctrine bars introduction of this evidence because no actual repairs or remedial measures are mentioned. Still, it is not certain that this work order relates to the particular defect alleged in this case. Therefore, this document may only be admitted at trial if Morris can establish relevance by laying a testimonial foundation.

Exhibit No. 20 is a work order form dated August 14, 2008. It contains no information other than that relating to the name, address, phone number, and policy number of the Kmart on Savannah Highway and a reference to "Work Order # S 304314," which is Exhibit No. 19. This document is irrelevant because it has no tendency to make a fact more or less probable that is of consequence in determining this action. Even if this document were relevant due to its relation to Exhibit No. 19—

assuming a proper foundation could be made for the introduction of Exhibit No. 19 into evidence—Exhibit No. 20 would constitute needless cumulative evidence that should be excluded under Rule 403.

Exhibit No. 21 is a service report dated August 15, 2008. The "Nature of problem" is that "[s]ometimes entrance doors and exit doors begin to open and stop or don't respond at all." The "Work performed" section states, "After extensive troubleshooting traced the intermittent problem to left leaf swing path side super scan wiring." This document is not barred by the subsequent repairs doctrine because it does not evince any actual repairs, only troubleshooting. If a proper foundation can be laid at trial, this document may be admitted into evidence.

Exhibit No. 22 is an invoice dated August 15, 2008. Similar to Exhibit No. 21, the "Work or service performed" section states, "After extensive troubleshooting traced the intermittent problem to the left leaf swing path Superscan wiring." For the reasons stated in the previous paragraph, this document may be admitted if plaintiff can lay a proper foundation at trial.

Exhibit No. 23 is a work order dated August 19, 2008. The "Vendor name" is "Carolina Door Controls," and the "Problem description" is "Changed bad control in left leaf of exit door. Changed bad Superscan slave on entrance door." This document must be excluded under the subsequent repairs doctrine, as it references attempted repairs made to the automatic doors after Morris was allegedly injured on June 24, 2008.

Exhibit No. 24 is a service report dated August 26, 2008. The "Nature of problem" was "Exit door one leg won't open . . . and entrance door has an intermittent opening problem." The "Work performed" includes, "Exit door changed bad control,

9

entrance door [illegible] left leg swing path Superscan, and changed bad slave.  Both doors are working fine at this time." This document must be excluded under the subsequent repairs doctrine, as it references attempted repairs made to the automatic doors after Morris was allegedly injured on June 24, 2008.

Finally, Exhibit No. 25 is a warranty bill dated August 26, 2008.  Under "Work," the document states, "Adj[usted] Superscan wiring.  Repl[aced] defective [control] / slave Superscan.  Both [doors] are working properly at this time."  This document must be excluded under the subsequent repairs doctrine, as it references attempted repairs made to the automatic doors after Morris was allegedly injured on June 24, 2008.

In conclusion, the court grants defendants' motion in limine to exclude plaintiff's proposed exhibits 10, 11, 12, 17, 18, 20, 23, 24, and 25.  The court defers ruling on the motion to exclude exhibits 6, 7, 8, 9, 19, 21, and 22 until trial.  Therefore, the motion in limine is granted in part.

### B.    Motion for Summary Judgment

Based on the above evidentiary rulings, and prior to the start of trial, defendants renewed their motion for summary judgment.  Defendants contend that Morris lacks sufficient evidence to prevail on a products liability case brought under either a strict liability or negligence theory, and asks the court to grant judgment as a matter of law in their favor.

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255.

### 1.     Strict Liability

Under South Carolina law, a "products liability case may be brought under several theories, including negligence, strict liability, and warranty." Rife v. Hitachi Constr. Mach. Co., 609 S.E.2d 565, 568 (S.C. Ct. App. 2005). Regardless of the particular theory, a plaintiff must establish: "(1) that he was injured by the product; (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant; and (3) that the injury occurred because the product was in a defective condition unreasonably dangerous to the user." Allen v. Long Mfg. NC, Inc., 505 S.E.2d 354, 356 (S.C. Ct. App. 1998) (internal quotation marks omitted).

The admissible evidence in this case leaves Morris with insufficient proof that her alleged injuries occurred because the automatic doors were in an unreasonably dangerous condition due to a manufacturing defect in the Superscan on the interior side of the left entrance door. In addition, Morris has not provided sufficient evidence that the product, at the time of the accident, was in essentially the same condition as when it left the hands of defendants, especially at it pertains to Dorma Automatics. The admissible documentary evidence is weak and does not point to the specific defect alleged, and Morris did not offer expert testimony to support her view. While South Carolina

jurisprudence does not always require that a plaintiff present expert testimony in a manufacturing defect case, the admissible evidence is insufficient to allow Morris to meet her burden of proof. Morris is essentially left with the argument that liability should be presumed based on the accident itself, but res ipsa loquitur is not a permissible theory of liability in this state. See Brown v. Ford Motor Co., 287 F. Supp. 906, 910 (D.S.C. 1968). Therefore, the court finds there are no genuine issues of material fact for trial, and judgment as a matter of law must be granted in defendants' favor on this claim.

### 2.     Negligence

In addition to the three requisite elements of a strict products liability claim enumerated above, "A negligence theory imposes the additional burden on a plaintiff 'of demonstrating the defendant (seller or manufacturer) failed to exercise due care in some respect, and, unlike strict liability, the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault.'" Branham v. Ford Motor Co., 701 S.E.2d 5, 9 (S.C. 2010) (quoting Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321, 326 (S.C. Ct. App. 1995)). The "fault-based element" of a negligence claim "is of no moment where . . . there is no showing in the first instance of a product in a defective condition unreasonably dangerous to the user." Id. As stated above, Morris cannot show, based on the admissible evidence, that the automatic doors were unreasonably dangerous due to the specific manufacturing defect alleged. Therefore, her negligence claim fails. See id. at 8 ("When an element common to multiple claims is not established, all related claims must fail.").

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART** defendants' motion in limine and **GRANTS** defendants' renewed motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 18, 2012**
**Charleston, South Carolina**

13